UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,           )
                                    )
                    Plaintiff,      )      Case No. 97-10102-MLW
                                    )
        v.                          )
                                    )
TIEN NGUYEN,                        )
                                    )
                    Defendant.      )

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR
### WRIT OF ERROR *CORAM NOBIS*, *AUDITA QUERELA*, OR OTHER RELIEF

The United States respectfully moves this Honorable Court to
deny Tien Nguyen's ("the defendant") petition for a writ of error
*coram nobis, audita querela,* or relief under the All Writs Act, or
Federal Rule of Civil Procedure 60(b) ("the Petition"), in which
he seeks to revoke his entry of a guilty plea and go to trial on
a counterfeit securities case, all to avoid potential immigration
consequences which have not yet materialized.  Because the Petition
does not involve a case or controversy under Article III, the Court
should dismiss the Petition.  Alternatively, if the Court finds
that there is a case or controversy the defendant's petition should
be denied because although he is able to demonstrate that a
fundamental error occurred through the ineffective assistance of
trial counsel, he *cannot* show a significant continuing collateral
consequence, and therefore justice does not demand the
extraordinary measure of granting *coram nobis* relief in this case.

## I. RELEVANT BACKGROUND

Beginning in June 1996, the defendant, Nguyen, then aged 17, engaged in a check-cashing scheme including arranging for the printing, mailing, and cashing of counterfeit checks. PSR ¶15.[1] While investigating a group of Vietnamese individuals suspected of engaging in heroin-trafficking, undercover police officer Judith Racow, posing as Judy DiGregorio, was approached by a suspect and asked to partake in the check-cashing scheme. PSR ¶2. She agreed to provide her name to be used on some of the counterfeit checks. PSR ¶2. Following an undercover operation conducted on April 3, 1997 by federal, state, and local law enforcement, Officer Racow assisted in the seizure of thirty counterfeit checks and the arrest of Nguyen and three co-defendants. PSR ¶¶5, 11. On April 4, 1997, in a post-arrest interview, Nguyen stated that he received the counterfeit checks from a contact in California. PSR ¶14. After finding people willing to cash forged payroll checks, he would send their names and information to his contact. PSR ¶14. The contact would send the checks, printed with those names, to Nguyen

---

[1] Citations are as follows. The citation "D._" refers to a docket entry. The Presentence report is cited as "PSR ¶_." The defendant's petition is cited as "Def Pet:_." The citation "Carney Aff. ¶_" refers to the April 20, 2017 Affidavit of J.W. Carney, Esq. filed with the Petitioner's Memorandum. The citation "Jan. 8 USCI Letter ¶_" refers to the January 8, 2015 letter from U.S. Citizenship and Immigration Services to the Petitioner, filed with the Petitioner's Memorandum.

in Massachusetts and he would then arrange for those people to cash the checks.  PSR ¶14.  The total amount of loss since the beginning of the check-cashing scheme in 1996 amounted to more than seventy thousand dollars and less than one hundred and twenty thousand dollars.  PSR ¶15.  In this case, the loss sustained by the victims, Fleet Bank, Bank Boston, and Eastern Bank, totaled $113,130.74.  PSR ¶1.  Nguyen was indicted in the District of Massachusetts on one count of possession of counterfeit securities under 18 U.S.C. § 513(a) (Count One) and one count of conspiracy under 18 U.S.C. § 371 (Count Two).  D. 17.

On November 5, 1997, the United States Attorney for the District of Massachusetts and Nguyen entered into a plea agreement. D. 72.  Nguyen agreed to plead guilty to Count One of the indictment and in return, the United States agreed to dismiss Count Two, the conspiracy charge, and recommend a sentence within a range of fifteen to twenty-one months' imprisonment.  The Indictment alleged in Count One that on or about April 3, 1997, in the District of Massachusetts, Tien Nguyen and Duyen Nguyen did knowingly possess counterfeited securities of an organization or legal entity which operates in, and the activities of which affect, interstate or foreign commerce, to wit: fifteen checks purporting to be drawn on a Fleet Bank Account and payable to Selina Griffin and fifteen checks purporting to be drawn on a Fleet Bank Account and payable to Judy DiGregorio, with the intent to deceive other

persons or organizations in violation of 18 U.S.C. §§ 513(a) and 2. D. 17.

Nguyen's trial counsel, Attorney J. W. Carney advised him "that possession of counterfeit securities was not a crime of moral turpitude or an aggravated felony and that a guilty plea only to Count One, possession of counterfeit securities, would avoid the potential for removal or deportation." Carney Aff. ¶ 6. This advice purports to have been informed by communications between immigration attorney, Anthony Drago, Esq. and trial counsel. *Id*. Before agreeing to plead guilty, Nguyen told Attorney Carney that he "would not plead guilty to any offense that would result in [his] removal or deportation." Carney Aff. ¶¶ 2, 6. Attorney Carney again affirmed his advice that Count Two, the conspiracy charge, would be dismissed and that a guilty plea to Count One would not cause removal or deportation because it was not an aggravated felony. Carney Aff. ¶¶ 6-7.

At the sentencing hearing on April 3, 1998, the Honorable Mark L. Wolf, District Judge, District of Massachusetts, imposed a sentence of fifteen months' incarceration, deemed served, with thirty-six months supervised release on Count One, and dismissed Count Two on the government's motion. Nguyen completed his term of supervised release in 2001 and was discharged. Def. Pet: 7.

After failed attempts to obtain derivative citizenship, Nguyen applied for naturalization. Nguyen Aff. ¶ 27. A decision

from the Department of Homeland Security, U.S. Citizenship and Immigration Services, dated January 8, 2015, stated that because Nguyen was convicted of an aggravated felony on or after November 29, 1990, he is "permanently barred from establishing good moral character" and thus permanently ineligible for naturalization. Jan. 8 USCI Letter. Nguyen claims that up until the USCIS decision, he believed his trial counsel's advice was accurate and did not know that his conviction under 18 U.S.C. § 513(a) constituted an aggravated felony and a deportable offense. Nguyen Aff. ¶ 27.

On May 25, 2017, Nguyen filed this Petition, challenging the validity of his conviction, under a writ of error *coram nobis*, writ of *audita querela*, relief under the All Writs Act, and under Rule 60(b) of the Federal Rules of Civil Procedure.

## II. PRELIMINARY MATTERS

As a preliminary matter, the Court ordered that the government's response also include the following information: 1) a statement notifying this court of the existence of any victim or victims as defined by 18 U.S.C. § 3771 (2017);[2] 2) whether the court has the authority to enjoin the Department of Homeland Security from placing the petitioner in removal or deportation

---

[2] Section 3771(e)(2)(a) defines a crime victim as "[a] person directly and proximately harmed as a result of the commission of a Federal offense …."

proceedings during the pendency of this case; and 3) whether petitioner has standing to seek such an injunction. D. 114.

First, the victims in this case are Fleet Bank, Bank Boston, and Eastern Bank, (none of which are in existence) and, although they reportedly sustained loss attributed to the defendants' conduct, it does not appear as though any order of restitution was entered. PSR ¶16.

Second, the District Court does not have the authority to enjoin the Department of Homeland Security from placing the petitioner in removal or deportation proceedings during the pendency of this case. Title 8, United States Code, Section 1229a(3), enacted as a part of the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRAIRA"), grants exclusive authority to the immigration judge ("IJ") over all immigration proceedings:

> Unless otherwise specified in this Act, a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States. Nothing in this section shall affect proceedings conducted pursuant to section 238 [Title 8, United States Code, Section 1228].

Not inconsistent with this provision is Title 8, United States Code, Section 1228(c)(1). This provision, also enacted under IIRAIRA, grants district courts the power to enter judicial orders of expedited removal at the time of sentencing. While in theory

this provision does provide district courts with an expanded role in the deportation procedure, this expansion is granted *only at the discretion of the United States Attorney with the concurrence of the Commissioner*. In effect, the statute transfers the IJ's otherwise exclusive control of deportation proceedings to the U.S. Attorney, and not the district courts, in this one specific area to be used at his/her own discretion.

The relationship between IJs and district courts is addressed in *United States v. Romeo*, 122 F.3d 941, 943 (11th Cir. 1997). In *Romeo*, the court of appeals interpreted Section 1229a(a)(3) of the IIRAIRA as clearly suggesting that "immigration judges alone have the authority to determine whether to deport an alien." The court continued:

> It is apparent to us that the new law [IIRAIRA] alters the district court's power to order deportation. The INA, as amended by IIRAIRA, 8 U.S.C. §1229(a)(3), does 'otherwise' authorize judicial orders of deportation, but only if such orders are "requested by the United States Attorney with the concurrence of the Commissioner [of the INS] and the court chooses to exercise such jurisdiction.

122 F.3d 941, 943. Similarly, in *Auguste v. Attorney General,* 118 F.3d 723, 727 (11th Cir. 1997) the Eleventh Circuit held that "[t]he power to expel aliens, being essentially a power of the political branches of government, the legislative and the executive, may be exercised entirely through executive officers…" (quoting *Carlson v. Landon*, 342 U.S. 524, 537 (1952)).

Therefore, it appears that the only way the district court could have subject matter jurisdiction over the issue of deportation is if the United States Attorney officially requests that it be granted. Absent that request, this court does not have the authority to enjoin the Department of Homeland Security from placing the petitioner in removal or deportation proceedings during the pendency of this case.

Finally, it is the Government's position that the defendant does have standing to seek such an injunction because under 8 U.S.C. § 1228(c), any alien convicted of an aggravated felony "shall be conclusively presumed to be deportable from the United States." *See* 8 U.S.C. § 1228(c). However, the Court could find that the defendant will suffer no injury because a repatriation agreement between the United States and Vietnam, entered into force on March 22, 2008, categorically excludes the defendant from deportation to Vietnam due to his arrival in the United States prior to 1995. *See* Agreement on the Acceptance of the Return of Vietnamese Citizens, U.S.-Socialist Rep. of Vietnam, art. 2, *signed* Jan. 22, 2008, T.I.A.S. Article 2 section 2 of the agreement states in pertinent part:

> Vietnamese citizens are not subject to return to Vietnam under this Agreement if they arrived in the United States before July 12, 1995, the date on which diplomatic relations were re-established between the U.S. Government and the Vietnamese Government. The U.S. Government and the Vietnamese Government maintain their

respective legal positions relative to
Vietnamese citizens who departed Vietnam for the
United States prior to that date.

*Id*. The Court could find that the defendant is not subject to deportation under the repatriation agreement because he arrived in the United States in 1984; therefore, he has no injury because final deportation to Vietnam is not reasonably foreseeable. *See id*; Nguyen Aff. ¶ 4. Furthermore, while it appears as though the petitioner could be placed in deportation proceedings because 8 U.S.C. § 1226(c)(1)(B) states that the Attorney General "shall take into custody any alien who …" is deportable by reason of committing an aggravated felony, the courts have generally held that an alien cannot be indefinitely detained. *See* 8 U.S.C. §§ 1226(c)(1)(B), 1231(a)(1)(A), 1231(a)(6); *Zadvydas v. Davis*, 533 U.S. 678 (2001) (reading six month limitation for alien detention after removal proceedings to protect due process rights to liberty under Fifth Amendment); *Reid v. Donelan*, 819 F.3d 486, 494 (1st Cir. 2016) (following Third and Sixth Circuit fact-dependent inquiry for reasonable detention limitation for period necessary for removal proceedings); *see also Dip v. ICE/Homeland Sec.*, 656 F.3d 221, 233 (3rd Cir. 2011); *Hoang Minh Ly v. Hansen*, 351 F.3d 263, 271 (6th Cir. 2003).[3]

---

[3]   8 U.S.C. § 1231(a)(1)(A) states "[e]xcpet as otherwise provided in this section, when an alien is ordered removed, the

## III. LEGAL STANDARDS

The Petition seeks relief under a writ of error *coram nobis*, writ of *audita querela*, the All Writs Act, or Rule 60(b) of the Federal Rules of Civil Procedure. Def. Pet: 1. The authority to grant writs derives from the All Writs Act, 28 U.S.C. §1651 (2017), which gives federal courts the power to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *United States v. George*, 676 F.3d 251, 253 (1st Cir. 2012). *See United States v. Morgan*, 346 U.S. 502, 506-07 (1954) (finding common law writs available to correct errors and attack judgments in federal criminal cases); *see also United States v. Sawyer*, 239 F.3d 31, 37 (1st Cir. 2001). A writ of *coram nobis* is "[d]istinguished from audita querela in that the former attacks the judgment itself whereas the latter is directed against the enforcement of the judgment …." *Trenkler v. United States*, 536 F.3d 88, 90 n.2 (1st Cir. 2008) (citing 7A C.J.S. Audita Querela §2, at 91 (1980)). The Government will address each claim in order below.

---

Attorney General shall remove the alien from the United States within a period of 90 days."

8 U.S.C. § 1231(a)(6) states in pertinent part, "[a]n alien ordered removed who is … removable under section 1227(a)(2) … may be detained beyond the removal period …."

**A.** *Coram Nobis*

"*Coram nobis* is an ancient writ that was originally intended to allow courts to correct technical errors in their past judgments." *Murray v. United States*, 704 F.3d 23, 28 (1st Cir. 2013). The All Writs Act, 28 U.S.C. §1651, gives federal courts the authority to grant writs traditionally available at common law, including a writ of error *coram nobis*. *See United States v. Morgan*, 346 U.S. 502, 506-07 (1954); *see also United States v. Sawyer*, 239 F.3d 31, 37 (1st Cir. 2001). While *coram nobis* is now available "as a remedy of last resort for the correction of fundamental errors of fact or law[,]" it is "an extraordinary remedy"—the "criminal-law equivalent" of the "Hail Mary pass" in federal courts. *United States v. George*, 676 F.3d 249, 251, 253 (1st Cir. 2012). Specifically, this writ is available only "to correct errors 'of the most fundamental character; that is, such as render[] the proceeding itself irregular and invalid.'" *Murray*, 704 F.3d at 28 (quoting *United States v. Mayer*, 235 U.S. 55, 69 (1914)). The Supreme Court has also explained that access to the writ requires that a defendant no longer be in custody, and that adverse collateral consequences from the conviction persist. *See Morgan*, 346 U.S. at 512; *see also Sawyer* 239 F.3d at 37-38. Post-*Morgan*, the Supreme Court has said little else regarding the writ—other than stressing "that there will rarely be situations warranting [its] deployment[.]" *George*, 676 F.3d

at 254; *see, e.g., Carlisle v. United States*, 517 U.S. 416, 429
(1996) (noting that "it is difficult to conceive of a situation
in a federal criminal case today where [a writ of *coram nobis*]
would be necessary or appropriate." (internal quotation marks and
citations omitted)); *United States v. Denedo*, 556 U.S. 904, 911
(2009) (highlighting the need to limit *coram nobis* to truly
extraordinary circumstances that compel its use to achieve justice
"so that finality is not at risk in a great number of cases[.]").

     In the context of *coram nobis* review, the court presumes that
the original proceeding was correct and places a heavy burden of
persuasion on the petitioner to show otherwise. *See Morgan*, 346
U.S. at 512; *see also George*, 676 F.3d at 255; *Murray v. United
States*, 821 F. Supp.2d 458, 467 (D. Mass. 2011). The First Circuit
has established a three-part test to determine whether a defendant
is eligible for the writ:

>          [A] coram nobis petitioner must [1] explain
>          his failure to seek earlier relief from
>          judgment, [2] show that he continues to suffer
>          significant collateral consequences from the
>          judgment, and [3] demonstrate that the
>          judgment resulted from an error of the most
>          fundamental character."

*George*, 676 F.3d at 254. Importantly, it has further explained
that "[e]ven if the test is satisfied, the court retains discretion
over the ultimate decision to grant or deny the writ. In other
words, passing the tripartite test is a necessary, but not a
sufficient, condition for the issuance of the writ." *Id*. at 255.

Ultimately, the court must be convinced "that justice demands the extraordinary balm of *coram nobis* relief." *Id*.

**B.    Writ of *Audita Querela***

*Audita querela* is "[t]he name of a common law writ constituting the initial process in an action brought by a judgment defendant to obtain relief against the consequences of the judgment on account of some matter of defense or discharge arising since its rendition and which could not be taken advantage of otherwise." *United States v. Holder*, 936 F.2d 1, 5 (1st Cir. 1991) (quoting Black's Law Dictionary 120 (5th ed. 1979)). The First Circuit has declined to explicitly affirm the availability of *audita querela* in the criminal context; however stating, "if available at all, the writ of *audita querela* can only be available where there is a legal objection to a conviction, which has arisen subsequent to that conviction, and which is not redressable pursuant to another post-conviction remedy." *Id*. at 5.

The defendant's *audita querela* claim is futile because it is based on purely equitable grounds and states no legal objection that has arisen subsequent to the conviction. *See United States v. Khalaf*, 116 F.Supp.2d 210, 217 (D. Mass 1999) ("the writ will not issue in the absence of a legal objection to a criminal conviction"); Def. Pet: 8-10. The defendant relies on two cases, *United States v. Salgado* and *United States v. Ghebreziabher*, to claim that audita querela may be granted on a solely equitable

basis. However, the First Circuit in *United States v. Holder* expressly agreed with the D.C. Circuit Court of Appeals in *United States v. Ayala*, holding that the "writ of audita querela does not and cannot, under any stretch of the imagination, provide a purely equitable basis for relief independent of any legal defect in the underlying judgment." *Holder*, 936 F.2d at 3; *United States v. Ayala*, 894 F.2d at 429. The D.C Circuit Court in *Ayala* disagreed with *Ghebreziabher* and *Salgado*, insofar as those courts found the issuance of the writ of *audita querela* appropriate in the absence of some legal objection to a criminal conviction. *Ayala*, 894 F.2d at 429. Thus, the Court should deny the Petition to the extent it seeks relief in the form of a writ of *audita querela*. *See Holder*, 936 F.2d at 5.

## C.    The All Writs Act and Rule 60(b)

The All Writs Act provides in pertinent part: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).  The defendant relies on the case *United States v. Javanmard*, 767 F.Supp. 1109 (D. Kan. 1991) to provide authority for granting relief directly under the All Writs Act. *Javanmard* is distinguished from the case at issue because the defendant in *Javanmard* did not allege that his conviction itself was in any way improper, but rather that equity alone demanded

relief. *See id*. at 1111. Furthermore, *Javanmard* has been superseded by the appellate authority of the 10th Circuit, under which the District of Kansas is subject. *United States v. Pinto*, 1 F.3d 1069, 1070 (10th Cir. 1993) (finding no authority to expunge petitioner's conviction under All Writs Act). In *Pinto*, the 10th Circuit held that equity considerations alone did not give the court jurisdiction to hear the case, stating "[w]hile we agree that the All Writs Act plays a part in enabling the court to issue the writs … necessary to accomplish an actual expungement, we believe that the authority to consider the issue in the first place is not contained in that Act." *Id.* at 1070 n.1; *see also United States v. Rowlands*, 451 F.3d 173, 179 (3rd Cir. 2006). In the event that the defendant fails to meet the stringent criteria that must be satisfied in order to invoke the writs of coram nobis and audita querela, he seems to be invoking relief directly under the All Writs Act on purely equitable grounds. *See Morgan*, 346 U.S. at 512; *George*, 676 F.3d at 256.

The First Circuit has held that neither of the common law writs of *coram nobis* nor *audita querela*, which gain their authority under the All Writs Act, may be invoked absent a factual or legal objection to a conviction; therefore, it does not follow that a defendant may be able to invoke relief solely under the All Writs Act on a purely equitable basis. *See George*, 676 F.3d at 256; *Khalaf*, 116 F.Supp.2d at 217. Thus, the Court should deny the

Petition to the extent it seeks relief directly under the All Writs Act because equity alone has not been considered a sufficient basis for relief in the First Circuit. *See Pinto*, 1 F.3d at 1070; *Holder*, 936 F.2d at 5.

Federal Rule of Civil Procedure 60(b), which allows for relief from a final judgment in limited circumstances, is a rule of civil procedure and does not apply to criminal cases. Fed. R. Civ. P. 60(b). Although the court in *Trenkler*, noted that 28 U.S.C. § 2255 proceedings are "generally treated as civil in nature" and thus, may be subject to Rule 60(b) relief, this case does not deal with a proceeding of that nature. *See Trenkler*, 536 F.3d at 94. Thus, the Court should deny the Petition to the extent it seeks relief under Rule 60(b).

## D.   <u>Ineffective Assistance</u>

The Sixth Amendment guarantees the right to "the assistance of counsel" in "all criminal prosecutions." US Const. Am. VI. The right to assistance of counsel is the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate ineffective assistance, the defendant must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Id*. at 688. To this end, defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *Id*. at 690. The Court must

then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  *Id.*

Second, a defendant must affirmatively prove prejudice.  *Id.* at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  *Lee v. United States*, U.S. LEXIS 4045 (2017); *Strickland, 466 U.S. at 694.*

**E.**　　**Immigration Law**

　　**i.**　**Aggravated Felonies**

The term "aggravated felony" for the purposes of immigration law is defined at 8 U.S.C. § 1101(43).  That definition contains twenty-one sub-paragraphs, denoted (A) through (U).  The subsection most relevant to this case is subparagraph (R): "an offense relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles the identification numbers of which have been altered for which the term of imprisonment is at least one year."  Section 43(U) also defines aggravated felonies to include attempts and conspiracies, and another provision makes crimes involving perjury or obstruction of justice aggravated felonies, as well.

To determine whether a conviction counts as an aggravated

felony, a court – immigration or Article III – must first engage in a categorical comparison between the elements of the crime of conviction and the generic crime described in the statute. *Moncrieffe v. Holder*, 569 U.S. ---, 133 S. Ct. 1678, 1685 (2013) (the categorical approach "has a long pedigree in our Nation's immigration law.") In this case, the generic crime in the statute would be "an offense that … involves fraud or deceit."

    a. Possession of Counterfeit Securities

There is no dispute that the possession of counterfeit securities in violation of 18 U.S.C. § 513(a) is an offense "relating to … counterfeiting" under 8 U.S.C. § 1101(43)(R). Title 18 U.S.C. § 513(c)(1) defines "counterfeited" as "a document that purports to be genuine but is not, because it has been falsely made or manufactured in its entirety." A further element of the statute requires that the defendant acted knowingly and with the intent to deceive. 18 U.S.C. § 513(a). The Second Circuit in *Kamagate v. Ashcroft*, held that in a § 513(a) offense, the requirement that the security be counterfeit coupled with the element of deceitful intent, is sufficient to make the offense be "relating to" counterfeiting under 8 U.S.C. § 1101(a)(43)(R). *Kamagate v. Ashcroft*, 385 F.3d 144, 154 (2nd Cir. 2004) (holding any violation of 18 U.S.C. § 513(a) qualifies as offense relating to counterfeiting).

    **ii. Inadmissibility and Removability**

The INA contains a long and detailed list of conditions that make an alien inadmissible. For example, an alien can be disqualified from entry if they have multiple criminal convictions or by committing a crime of moral turpitude. 8 U.S.C. §§ 1182(a)(2)(A)(i)(I); 1182(a)(2)(B). An alien previously given permission to enter the country may nevertheless be ordered to leave under certain circumstances. 8 U.S.C. § 1227. Conviction for an aggravated felony can be such a removable offense because the statute states, "Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii).

Determinations of inadmissibility and removability are subject to motions for reconsideration by the immigration judge, and can be appealed to the Board of Immigration Appeals, which is part of the United States Department of Justice. 8 C.F.R. §§ 1003.2; 1003.23. Final decisions regarding orders of removal by the BIA can be appealed to the court of appeals. 8 U.S.C. § 1252(a)(1). Certain discretionary decisions by the BIA are held by statute to not be subject to judicial review. 8 U.S.C. § 1252(a)(2)(stating "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section … 1227(a)(2)(A)(iii),(B),(C), or (D) of this title….").

Furthermore, even if an alien is determined to be inadmissible

or removable, discretionary and non-discretionary relief exists within the INA. *See, e.g.*, 8 U.S.C. §§ 1158 (asylum); 1182(h) (discretionary waiver of inadmissibility for hardship); 1229b(a) (discretionary cancellation of removal). For example, an alien who is physically present in the United States or who arrives in the United States, irrespective of the alien's status, may apply for asylum. 8 U.S.C. §§ 1158 (a)(1). The Attorney General of the United States and the Secretary of Homeland Security have discretion to grant or reject an asylum application. 8 U.S.C. § 1158 (b)(1)(A). Under § 1158 (b)(2)(B)(i), "an alien who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime." For asylum application purposes, if the Attorney General determines that an alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community, that alien may not apply for asylum. 8 U.S.C. § 1158 (b)(2)(A)(ii).

Additionally, the Attorney General may, in his discretion, grant a discretionary waiver of <u>inadmissibility</u> under several circumstances. 8 U.S.C. § 1182(h). A situation warranting this waiver includes the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence where denial of the alien's admission would result in extreme hardship to the aforementioned family members. 8 U.S.C. § 1182(h)(1)(B). However,

a discretionary waiver of <u>inadmissibility</u> is not available for "an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if … since the date of such admission the alien has been convicted of an aggravated felony."  8 U.S.C. § 1182(h). Even if a defendant is eventually found by an IJ to have been convicted of an aggravated felony, they will not necessarily be barred from taking advantage of the discretionary hardship waiver of inadmissibility found in 8 U.S.C. § 1182(h).

The First Circuit defers to the BIA's interpretation of the statute, which finds relief unavailable "for any alien who has been convicted of an aggravated felony after acquiring lawful permanent resident status, without regard to the manner in which such status was acquired." Matter of Rodriguez, 25 I. & N. Dec. 784, 789 (BIA 2012).  A number of other circuits have rejected the BIA's interpretation, holding that the "plain language" of the waiver section meant that immigrants who <u>first</u> came into the country as visitors, and <u>then</u> adjust to become lawful permanent residents, and <u>then</u> commit an aggravated felony, are not barred from seeking the discretionary waiver. *See Bracamontes v. Holder*, 675 F.3d 380 (4th Cir. 2012); *Negrete-Ramirez v. Holder, 741 F.3d 1047,* 1054 (9th Cir. 2014) ("Only noncitizens who entered the United States as LPRs are barred from eligibility to apply for the [family hardship] waiver"); *Lanier v. United States AG*, 631 F.3d

1363 (11th Cir. 2011).

However, the First Circuit in *Onwuamaegbu* stated that, "[o]nce an immigrant has been admitted as an LPR, he may obtain a waiver only if he meets the seven-year rule" and "[i]f an immigrant has never before been admitted as an LPR, he is not disqualified from obtaining a § 212(h) waiver." *Onwuamaegbu v. Gonzales, 470 F.3d 405, 409 (1st Cir. 2006)*. This distinction between immigrants that have never before been admitted as lawful permanent residents, for example illegal aliens, and immigrants that have been admitted as lawful permanent residents is consistent with the BIA's interpretation of 8 U.S.C. § 1182(h). *See id.*

Furthermore, the Attorney General may grant a discretionary cancellation of <u>removal</u> in the case of an alien who is inadmissible or deportable from the United States if the alien meets the three requirements in § 1229(a). The third requirement, however, states that an alien is not eligible for discretionary cancellation of removal if that person is found by an immigration judge to have been convicted of an aggravated felony. 8 U.S.C. § 1229b(a)(3).

## IV. ARGUMENT

### A. The Petition should be Dismissed for Lack of Jurisdiction because there is no Case or Controversy

The Constitution is a grant, by the several states, of limited enumerated powers to the federal government. *United States v. Lopez*, 514 U.S. 549, 552 (1995). "The powers delegated by the …

Constitution to the federal government are few and defined. Those which are to remain in the State governments are numerous and indefinite." *Id.* (*quoting* James Madison, Federalist No. 45). The "limited enumerated" authority of the federal judiciary is set out in Article III of the Constitution as extending (along with various other sources of jurisdiction not relevant here) to "Cases … arising under this Constitution [or] the Laws of the United States [and] to Controversies to which the United States shall be a Party…." U.S. Const. art. III, § 2, cl. 1. If the Constitution does not grant the judiciary the authority to consider a matter, the judiciary is deprived of jurisdiction.

Ripeness "has roots in both the Article III case or controversy requirement and in prudential considerations." *Reddy v. Foster*, 845 F.3d 495, 500 (1st Cir. 2017). A claim "is not ripe for adjudication" if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). Furthermore, "the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of" the judicial relief sought. *Reddy*, 845 F.3d at 501 (quoting *Labor Relations Div. of Constr. Indus. Of Mass., Inc. v. Healey*, 844 F.3d 318 (1st Cir. 2016)). If a claim is not ripe, it is not a "case or controversy" and there is no jurisdiction for

an Article III court to even entertain the claim, let alone adjudicate it.

The defendant's Petition relies exclusively on the occurrence of a future event – his deportation – that has yet to happen and, in fact, may not happen at all. The defendant's deportation (or even the existence of an order to that effect) is a "contingent future event." Texas, 523 U.S. at 300. It "may not occur as anticipated" or "may not occur at all." Id. Here, the defendant is unable to show that he continues to suffer a significant collateral consequence from the judgment; therefore, this failure to meet one of coram nobis requirements is fatal to the Petition. See George, 676 F.3d at 254 (finding that passing the tripartite test is a necessary, but not a sufficient, condition for the issuance of the writ).

The sole case that the defendant relies upon to satisfy the significant collateral consequences requirement is Padilla. Def. Pet: 21. The Padilla court rejected the view that there is a distinction between consequences of a guilty plea that are "direct" and those that are "collateral" in the context of immigration consequences. Padilla v. Commonwealth, 381 S.W.3d 322, 325 (Ct. App. Ky. 2012). Rather, the court found that deportation is a "severe penalty" inseparable from the criminal conviction in the deportation context. Id. Unlike the defendant in this case, the petitioner in Padilla had been served with an immigration detainer

while in prison and therefore, faced deportation upon release. *Padilla* 381 S.W.3d at 324. The defendant cannot make these showings.

While the First Circuit case, *Castro-Taveras*, includes a petitioner who was not in any form of immigration custody and did not have removal proceedings pending against him at the time of his petition, the court did not rule on this issue. *See United States v. Castro-Taveras*, 841 F.3d 36, 37-38 (1st Cir. 2016). Rather, the case was remanded for a hearing to the district court of Puerto Rico to determine whether the petitioner satisfied the two-prong *Strickland* test. *Id.* at 54. At this time, the issue has yet to be ruled upon.

Unless there are portions of the defendant's immigration case that he is concealing in this petition, no deportation or removal proceedings that have been initiated against him, nor has he been notified that he is likely to be the subject of a removal or deportation proceeding. No Immigration Judge has yet concluded that the defendant is an aggravated felon, nor has any Immigration Judge found the defendant to be either inadmissible or removable on that basis or any other basis. Consequently, the Board of Immigration Appeals has not yet heard any appeal from that non-existent determination by a non-existent Immigration Judge. Likewise, the First Circuit has not yet been given an opportunity to consider an appeal from any non-existent BIA order. Here,

unlike *Padilla*, there is simply no order of inadmissibility or removal in effect. Until the defendant is facing actual consequences, his removal is a "contingent future event" that "may not occur as anticipated." Texas, 523 U.S. at 300.

### i. The Question of Whether the Defendant is an Aggravated Felon is not Yet Adjudicated

The defendant claims that he is facing "mandatory deportation" and inadmissibility because he is an aggravated felon. Def. Pet: 7-8, 20. This opinion is based on a letter the defendant received from the United States Citizen and Immigration Services ("USCIS") that stated he was ineligible for naturalization because he had been convicted of an aggravated felony. Def. Pet: 7. Furthermore, the defendant claims he was specifically advised that due to recent changes in immigration policy, removal or deportation proceedings were "realistic probabilities." Def. Pet: 8.

The defendant specifically pled guilty to possession of counterfeit securities with the intent to deceive under 18 U.S.C. § 513(a). While the First Circuit has never specifically ruled on this issue, the Second Circuit in *Kamagate v. Ashcroft*, held that any violation of a 18 U.S.C. § 513(a) qualifies as offense relating to counterfeiting under 8 U.S.C. § 1101(a)(43)(R). *Kamagate*, 385 F.3d at 154. However, If ICE believes that the defendant is an aggravated felon they have yet to show it. To put a finer lens on

this: despite the defendant's conviction in 1998, at this stage even ICE is not seeking to deport the defendant on the basis that he committed an aggravated felony, as removal proceedings are not presently pending against him and he is not currently in any form of immigration custody.

The finality of this criminal conviction should not be overturned on the basis of a belief that someday an immigration judge might find the defendant to be an aggravated felon when ICE itself is not currently seeking to deport the defendant as an aggravated felon. This "extraordinary remedy" that should be granted "only under circumstances compelling such action to achieve justice" should not disturb a fourteen year old conviction simply because the defendant is nervous that an IJ is going to do something that ICE has not even asked the IJ to do. *Morgan*, 346 U.S. at 511.

### ii. The Question of Whether Discretionary Relief is Available is Not Yet Adjudicated

The defendant asserts that relief from removal, for example by a discretionary hardship waiver, will not be available even if he is found to have committed one or more crimes that make him inadmissible. If the defendant is found by an immigration judge to have been convicted of an aggravated felony, he would not be eligible for discretionary cancellation of removal. 8 U.S.C. § 1229b(a)(3). Furthermore, a discretionary waiver of

inadmissibility is not available for "an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if … since the date of such admission the alien has been convicted of an aggravated felony." 8 U.S.C. § 1182(h). In line with the First Circuit and BIA's interpretation of § 1182(h), the defendant would not be eligible for a discretionary waiver of <u>inadmissibility</u> because he became a permanent resident in 1984 and was subsequently convicted of possession of counterfeit securities under 18. U.S.C. § 513(a). Def. Pet: 2, 6.

Because the Constitution only allows courts to resolve cases or controversies, and because the defendant has not even yet been ordered deported, the petition rests on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. at 300. It is therefore not ripe, and the government respectfully requests that the Court dismiss the petition for lack of jurisdiction.

**B.** **<u>The Petition should be Denied because the Defendant cannot show that he Continues to Suffer Significant Collateral Consequences from the Judgment</u>**

In the event that the Court finds that the case is ripe for consideration even though the defendant is not in deportation or removal proceedings, and there is no order of removal, then the government submits that the Court should deny the Petition because he cannot show that he continues to suffer significant collateral

consequences from the judgment. In this case, if the Court finds that the defendant is subject to the terms of the repatriation agreement with Vietnam, any claim for relief is moot because he would be categorically excluded from deportation to Vietnam. *See Hoang Minh Ly v. Mark Hansen, James Ziglar, and John Ashcroft*, 351 F.3d 263, 273 (6th Cir. 2004) (finding removal not reasonably foreseeable because no repatriation treaty existed with Vietnam). *But see Demore v. Hyung Joon Kim*, 38 U.S. 513, 531 (2003) (finding deportation a real and imminent probability where defendant conceded deportability). In the alternative, if the Court finds that the defendant does not qualify for the protections of the agreement and is therefore, subject to deportation, his claim for relief still fails because he cannot show that he continues to suffer significant collateral consequences from the judgment. *See Morgan*, 346 U.S. at 512; *George*, 676 F.3d at 255. Thus, the Court should deny the Petition to the extent it seeks relief under a writ of coram nobis. *See Padilla v. Kentucky*, 559 U.S. 359, 384-86 (2010); *Castro-Taveras*, 841 F.3d at 52-53; *George*, 676 F.3d. at 254.

As to the first requirement of *coram nobis* relief, the defendant provided adequate explanations for failing to seek earlier relief from the judgment. *See United States v. Akinsade*, 686 F.3d 250, 552 (4th Cir. 2012); Def. Pet: 20. Until receipt of the USCIS decision in 2015, rejecting his application for

naturalization, the defendant claimed he continued to "believe that his conviction for possession of counterfeit securities was not an aggravated felony … and that he was simply not subject to removal or deportation" pursuant to the information provided by his trial counsel. Nguyen Aff. ¶¶ 27-28; Exhibit F; Def. Pet: 20. In *Akinsade*, the Fourth Circuit found that until physically detained by immigration authorities, the defendant "had no reason to challenge the conviction as his attorney's advice, up to that point in time, appeared accurate." 686 F.3d at 552 (finding adequate reasons for failing to seek earlier relief). Similarly, in this case, the defendant claims he had no prior reason to challenge what he believed to be accurate legal advice; thus, the Court should find that he provided adequate explanations for failing to seek earlier relief from the judgment, thereby satisfying the first requirement of *coram nobis* relief. *See George*, 676 F.3d at 254; *Akinsade*, 686 F.3d at 552; Def. Pet: 20.

The defendant cannot, however, meet his burden as to the second requirement because he cannot "show that he continues to suffer a significant collateral consequence from the judgment being challenged and that issuance of the writ will eliminate this consequence[.]" *Murray*, 704 F.3d at 29; *see also George*, 676 F.3d at 256, n.3 (stating that "there is a second piece of the continuing collateral consequences requirement: it must be shown that the court's decree will eliminate the claimed collateral

consequence and bring about the relief sought."). The Seventh

Circuit described this requirement as follows:

> First, the disability must be causing a present
> harm; it is not enough to raise purely
> speculative harms or harms that occurred
> completely in the past. Second, the disability
> must arise out of the erroneous conviction.
> Third, the potential harm to the petitioner must
> be more than incidental.

*United States v. Craig*, 907 F.2d 654, 658 (7th Cir. 1990). While

the defendant claims that exposure to removal or deportation to

Vietnam is a significant collateral consequence, as addressed

above, if the Court finds that the repatriation agreement with

Vietnam affords protection to the defendant, any deportation

consequence is rendered moot. *See George*, 676 F.3d at 254; Def.

Pet: 21-22. However, if the Court finds that the defendant should

not qualify for the protections of the treaty, the Court could

find that he meets the second requirement because deportation can

be considered both a significant direct and collateral consequence

of a conviction. *See Padilla* 559 U.S. at 346, 366 (stating that

"[d]eportation as a consequence of a criminal conviction is,

because of its close connection to the criminal process, uniquely

difficult to classify as either a direct or a collateral

consequence."); *see also Castro-Taveras*, 841 F.3d at 38.

As to the second piece of the collateral consequence

requirement, for immigration purposes, a vacated conviction may

only provide relief and eliminate collateral consequences in

certain situations. *See Matter of Pickering*, 23 I. & N. Dec. 621, 624 (B.I.A. 2003); *see also Herrera-Inirio v. INS*, 208 F.3d 302, 306 (1st Cir. 2000). To determine whether a vacated conviction still applies as a "conviction" for immigration purposes, the federal Board of Immigration Appeals has distinguished between convictions vacated on the basis of procedural or substantive defects in the underlying proceedings and those vacated due to post-conviction events such as rehabilitation or immigration hardships. *See Pinho v. Gonzales*, 432 F.3d 195, 199 (3rd Cir. 2005); *Matter of Pickering*, 23 I. & N. Dec. at 624; *see also Herrera-Inirio*, 208 F.3d. at 306. If a court with jurisdiction vacates a conviction based on a defect in the underlying criminal proceedings, there is no longer a "conviction" for immigration purposes within the meaning of 8 U.S.C. § 1101(a)(48)(A). *See Matter of Pickering*, 23 I. & N. Dec. at 624. However, if a court with jurisdiction vacates a conviction based on post-conviction events such as rehabilitation or immigration hardships, the "conviction" still applies for immigration purposes. *See Id*.

In this case, if the Court vacates the defendant's conviction based on his claim of ineffective assistance of counsel as a fundamental error, his conviction would no longer apply for immigration purposes. *See id*. However, the court's decree would still fail to satisfy the second part of the collateral consequence requirement. As the defendant cannot show that he is currently

suffering a significant collateral consequence from the judgment, the decree cannot eliminate a collateral consequence that does not exist. *See George*, 676 F.3d at 254; Def. Pet: 21-22. Furthermore, the decree cannot bring about the relief sought, namely protection from deportation to Vietnam, because the defendant is already protected from deportation to Vietnam due to the repatriation treaty. See *Craig*, 907 F.2d at 658.

Therefore, the defendant fails to meet the second requirement of *coram nobis* relief because he cannot "show that he continues to suffer a significant collateral consequence from the judgment being challenged and that issuance of the writ will eliminate this consequence." *See George*, 676 F.3d at 256; *Matter of Pickering*, 23 I. & N. Dec. at 624; *see also Herrera-Inirio*, 208 F.3d. at 306.

To satisfy the third requirement, an error of the most fundamental character, the defendant's ineffective assistance of counsel claim must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness, not within the range of competence demanded of attorneys in criminal cases. *See Hill v. Lockhart*, 474 U.S. 53, 66 (1985); *Strickland v. Washington*, 466 U.S. 671, 688 (1984). In 2010 the Supreme Court in *Padilla*, held that trial counsel's affirmative misadvice, in addition to failure to advise, falls within the Sixth Amendment's guarantee of effective assistance of counsel. *Padilla*, 559 U.S. at 346. Furthermore, the First Circuit in *Castro-Taveras*,

held that *Padilla's* ruling on affirmative misadvice did not constitute a "new rule," and thus, was not barred by *Teague v. Lane's* retroactivity doctrine. *See id.; Teague v. Lane*, 489 U.S. 288 (1989); *Castro-Taveras*, 841 F.3d at 43 (holding affirmative misadvice regarding deportation consequences of guilty plea could violate Sixth Amendment right to effective assistance of counsel); Carney Aff. ¶¶6-8; Nguyen Aff. ¶¶19, 21; Ex. E. To show an error of the most fundamental character, the defendant's ineffective assistance of counsel claim, due to affirmative misadvice, must satisfy the two-prongs under *Strickland* in which he must show that his counsel's performance was deficient and the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687.

Based off communications with immigration attorney, Anthony Drago, the defendant's trial counsel, Attorney Carney, provided incorrect advice that a conviction under 18 U.S.C. § 513(a) was not an aggravated felony and therefore, did not carry immigration consequences. Carney Aff. ¶ 6; Nguyen Aff. ¶ 19. However, the terms of the relevant immigration statutes are succinct, clear, and explicit in defining the removal consequence for the defendant's conviction. *See* 8 U.S.C. § 1101(a)(43)(R)[4], 1227(a)(2)(A)(iii),

---

[4]    8 U.S.C. § 1101(a)(43)(R) defines one type of aggravated felony as: "an offense relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles the

1228(c). Here, the Court could find that the defendant meets the first prong of the *Strickland* test due to his trial counsel's deficient performance. *See Strickland*, 466 U.S. at 687.

Furthermore, the defendant likely meets the second prong of the *Strickland* test because he puts forth sufficient evidence that, had he been properly informed of the deportation consequences of his plea, he would not have plead guilty and would have insisted on going to trial. *See id.*; Carney Aff. ¶¶2, 12; Nguyen Aff. ¶¶12, 19, 21, 36. The recent Supreme Court case, *Lee v. United States*, held that where deportation was the "determinative issue" in deciding whether to accept a plea, it was not irrational for the defendant to reject the plea deal and go to trial when there was some chance of avoiding deportation, however remote. Lee v. United States, U.S. LEXIS 4045 (2017). In this case, the Court could find that deportation was the determinative issue in the defendant's decision to accept the plea, and therefore, he was prejudiced by his trial counsel's affirmative misadvice. *See id*.

Thus, the Court could find that the defendant satisfies the third requirement of coram nobis relief because his trial counsel's affirmative misadvice regarding the deportation consequences of his guilty plea satisfied the two-prong test of ineffective

identification numbers of which have been altered for which the term of imprisonment is at least one year."

assistance of counsel under *Strickland*, and was therefore, an error of the most fundamental character. *See George*, 676 F.3d at 254; *Strickland*, 466 U.S. at 688; *Castro-Taveras*, 841 F.3d at 43; Def. Pet: 23-25.

Despite meeting the first and third requirements of *coram nobis* relief, the defendant fails to meet his burden as to the second requirement, in that he cannot show the existence of a significant collateral consequence from the judgment. Thus, the Court should deny the Petition to the extent it seeks relief under a writ of *coram nobis*. *See Padilla v. Kentucky*, 559 U.S. at 384-86; *United States v. Castro-Taveras*, 841 F.3d at 52-53; *George*, 676 F.3d. at 254.

<u>CONCLUSION</u>

Defendant's Motion should be denied for the reasons stated herein.

Respectfully submitted,
WILLIAM D. WEINREB
Acting United States Attorney

By:  */s/ Emily O. Cannon*
EMILY O. CANNON
Assistant US Attorney

Date: August 25, 2017

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ *Emily O. Cannon*
Emily O. Cannon
Assistant United States Attorney

Date: August 25, 2017