UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TIEN NGUYEN,                    )
    Petitioner,                )
                            )
          v.                      )
                            )   Cr. No. 97-10102-MLW
UNITED STATES OF AMERICA,       )
    Respondent.                )

MEMORANDUM AND ORDER

WOLF, D.J.                                      September 22, 2021

      Petitioner Tien Nguyen, a Vietnamese national, pled guilty in 1997 to possession of counterfeit securities. In 2017, Nguyen filed a Petition for Coram Nobis, Audita Querela, or Other Appropriate Relief (Dkt. No. 111) (the "Petition") in which he seeks to vacate his conviction on the ground that his guilty plea was made on his counsel's inaccurate advice that this offense did not constitute an "aggravated felony" which would subject him to deportation and render him ineligible for naturalization.

      As explained below, the court is granting the Petition because this case presents extraordinary circumstances warranting the unusual remedy of coram nobis relief.

I. FACTS

Nguyen was born in Saigon, Vietnam in 1978. He entered the United States in 1983 with his father, who had been an officer in the South Vietnamese Army and was apparently fleeing the ruling Communist Party. His father obtained asylum based on his fear of persecution. See Affidavit of Tien Nguyen (Docket No. 111-1) (the "Nguyen Aff.") at ¶4. In 1984, Nguyen obtained permanent resident status as a refugee. See id. at ¶5. Nguyen's father became a naturalized United States citizen in 1990. See Jun. 12, 1997 letter from J.W. Carney, Esq. to Anthony Drago, Esq., Exhibit B to Petition (the "Carney Letter") (Dkt. No. 111-2) at 8 of 23.

On April 23, 1997, Nguyen was indicted with several co-conspirators on one count of possession of counterfeit securities in violation of 18 U.S.C. §513(a) and one count of conspiracy in violation of 18 U.S.C. §371. See Indictment, Exhibit A to Petition (Dkt. No. 111-2) at 2-5 of 23. These charges stemmed from a check-cashing scheme in which Nguyen located people in Massachusetts who were willing to cash forged payroll checks and provided their names to an acquaintance in California. See Indictment at 3. The acquaintance had forged checks issued in their names and sent them to Nguyen. See id. Nguyen then had these people cash the counterfeit checks. See id. at 3-4. He was eventually caught after soliciting an undercover police officer to participate in this scheme. See id.

2

J. W. Carney, Esq. was appointed as Criminal Justice Act counsel for Nguyen. See Nguyen Aff. at ¶11. Nguyen informed Carney that he had fled Vietnam as a refugee as a child and that his priority in this case was to avoid possible deportation. See id. at ¶12. Carney consulted Anthony Drago, Esq., an immigration lawyer, to advise him concerning the potential immigration consequences of a conviction in this case. See Affidavit of J. W. Carney (the "Carney Aff.") (Dkt. No. 111-3) at ¶¶2-5; see also Carney Letter (stating that "[Nguyen]'s legal status is of particular concern because the Government has made mention of the fact that this boy could be facing deportation if he pleads guilty to the charges or is convicted of the charges."). Drago advised Carney that the possession of counterfeit currency securities would not be an "aggravated felony" or a "crime of moral turpitude." Carney Aff. at ¶6. Relying on this advice, Carney told Nguyen that a guilty plea to the possession of counterfeit securities charge "would avoid the potential for removal or deportation." Id. at ¶¶6-7.

Carney subsequently negotiated a plea agreement in which the government agreed to dismiss the conspiracy charge. See Plea Agreement, Exhibit C to Petition (Dkt. No. 111-2) at 11-15 of 23. Carney thought that this plea agreement would allow Nguyen to avoid immigration consequences because of his belief, based on Drago's advice, that the remaining count of possession of counterfeit

3

securities did not constitute an "aggravated felony" or "crime of moral turpitude" under the Immigration and Nationality Act ("INA"). See 8 U.S.C. §§1101(a)(43), (f)(8); 8 CFR §316.10(b)(1)(ii), (2)(i); see also Apr. 9, 1998 Letter from Drago to Carney, Exhibit E to Petition (Dkt. No. 111-2) at 20 of 23.

Nguyen pled guilty to the charge of possession of counterfeit securities on November 10, 1997. See Nguyen Aff. at ¶¶20-22. On April 3, 1998, the court sentenced him to serve 15 months incarceration and 36 months Supervised Release. See Nguyen Aff. at ¶24. It also granted the government's motion to dismiss the conspiracy charge. See id.

After Nguyen was released from custody, he made several attempts to obtain derivative citizenship through his father. See Nguyen Aff. at ¶26. These efforts failed, at least in part because Nguyen's father had died and Nguyen was unable to acquire the necessary documentation. See id.

Following these failed attempts to obtain derivative citizenship through his father, Nguyen applied for non-derivative naturalization, pursuant to 8 U.S.C. §1427(a), based on his continuous lawful presence in the United States. See id. at 27. On January 8, 2015, United States Citizenship and Immigration Services ("USCIS") issued its decision denying Nguyen's application. See Decision Letter, Exhibit F to Petition (Dkt. No. 111-2) at 22-23 of 23. It stated that Nguyen's conviction for

4

possession of counterfeit securities constituted an aggravated felony under the INA. See id. USCIS reasoned that Nguyen's offense was an aggravated felony, as defined by 8 U.S.C. §1101(a)(43)(D), because violation of 18 U.S.C. §513(a) constituted "an offense described in section 1956 of title 18." Id. USCIS stated that Nguyen's conviction for an aggravated felony permanently bars him from establishing the requisite "good moral character" to obtain citizenship through naturalization. See id.; see also 8 U.S.C. §1427(a) ("No person . . . shall be naturalized unless such applicant . . . has been and still is a person of good moral character . . . ."); 8 U.S.C. §1101(f)(8) ("No person shall be regarded as, or found to be, a person of good moral character who . . . is . . . one who at any time has been convicted of an aggravated felony (as defined in [8 U.S.C. §1101](a)(43))."). The decision does not state any other ground for the denial. See id.

After receiving the Decision Letter, Nguyen sought advice from immigration attorneys and was informed that an appeal of USCIS's decision would be futile. See Nguyen Aff. at ¶28. Nguyen retained counsel and filed the Petition on May 25, 2017. See id. Nguyen seeks relief primarily in the form of a writ of error coram nobis. In the alternative he seeks relief in the form of a writ of audita querela, or "other appropriate relief under the All Writs Act, or under Rule 60(b) of the Federal Rules of Civil Procedure." Dkt. No. 112 at 1. The government filed its opposition to the

Petition on August 25, 2017 (Docket No. 120) (the "Opposition").

Nguyen filed a reply on September 21, 2017 (Docket No. 125).

## II. LEGAL STANDARDS

A court considering a coram nobis petition presumes that the
original proceedings were valid.  See United States v. Morgan, 346
U.S. 502, 512 (1954).  The burden to prove otherwise is a heavy
one and is placed on the petitioner.  Id.  As the First Circuit
has explained:

> [I]n its modern form, [the writ of error coram nobis] is
> ordinarily available only to a criminal defendant who is
> no longer in custody. . . .   But [a defendant's]
> eligibility for this remedy of last resort hinges on
> more than the simple fact that he is no longer serving
> his sentence.  For one thing, he must adequately explain
> his failure to seek relief earlier through other means.
> Further, he must also show that he continues to suffer
> a significant collateral consequence from the judgment
> being challenged and that issuance of the writ will
> eliminate this consequence.   Finally . . . he must
> demonstrate that the judgment resulted from a
> fundamental error.   And even if Petitioner satisfies
> this tripartite test, [a court] retain[s] discretion to
> grant or deny the writ.   Indeed, the Supreme Court has
> always envisioned [coram nobis] as strong medicine, not
> profligately to be dispensed, so [a court] must issue
> this writ only under circumstances compelling such
> action to achieve justice.

Williams v. United States, 858 F.3d 708, 714-15 (1st Cir. 2017)

(internal quotations and citations omitted).

## III. DISCUSSION

The government properly concedes that the Petition is timely.
See Opposition at 29-30.  The First Circuit has not required
petitioners to file coram nobis petitions within any specific

amount of time, and instead only requires that they "explain [their] failure to seek relief from the judgment earlier." United States v. George, 676 F.3d 249, 254 (1st Cir. 2012).

The government also properly concedes that Nguyen's conviction resulted from ineffective assistance of counsel, which is a fundamental error. See Opposition at 35-36. "To succeed on [his ineffective assistance of counsel] argument, [p]etitioner must first show that his counsel's 'performance was deficient,' and he must then show that 'the deficient performance prejudiced the defense.'" Williams, 858 F.3d at 715 (quoting Strickland v. Washinton, 466 U.S. 668, 687 (1984)).

In 2010, the Supreme Court recognized that counsel's failure to advise or provision of inaccurate advice regarding the deportation consequences of a guilty plea constitutes ineffective assistance of counsel under the Sixth Amendment. See Padilla v. Kentucky, 559 U.S. 356, 364-71 (2010). The First Circuit has found Padilla to be retroactive as to claims, like Nguyen's, that counsel affirmatively misadvised, rather than failed to advise, a defendant about the deportation consequences of a guilty plea. See United States v. Castro-Taveras, 841 F.3d 34, 51 (1st Cir. 2016). As the government notes, "the terms of the relevant immigration statutes are succinct, clear, and explicit" in defining Nguyen's conviction as an "aggravated felony" to which

7

severe immigration consequences attach. Opposition at 34.[1]

Carney's advice to Nguyen that the possession of counterfeit

securities charge to which he pled guilty was not an aggravated

felony and would not subject him to possible deportation "'fell

below an objective standard of reasonableness.'" United States v.

Peralta, 597 F.3d 74, 79 (1st Cir. 2010) (quoting Strickland, 466

U.S. at 688). He was, therefore, ineffective.

Nguyen has also established that he was prejudiced by his

counsel's ineffectiveness. See Strickland, 466 U.S. at 687-88.

As the Supreme Court has held:

> When a defendant alleges his counsel's deficient
> performance led him to accept a guilty plea rather than
> go to trial, we do not ask whether, had he gone to trial,
> the result of that trial would have been different than
> the result of the plea bargain. . . . We instead
> consider whether the defendant was prejudiced by the
> denial of the entire judicial proceeding . . . to which
> he had a right. . . . [W]hen a defendant claims that
> his counsel's deficient performance deprived him of a
> trial by causing him to accept a plea, the defendant can
> show prejudice by demonstrating a reasonable probability
> that, but for counsel's errors, he would not have pleaded
> guilty and would have insisted on going to trial.

---

[1]   Specifically, 8 U.S.C. §1101(a)(43)(R) defines one type of
aggravated felony as "an offense relating to . . . counterfeiting
. . . for which the term of imprisonment is at least one year."
"Any violation of 18 U.S.C. §513(a) qualifies as an offense
relating to counterfeiting and, thus, as an aggravated felony under
8 U.S.C. § 1101(a)(43)(R)." Kamagate v. Ashcroft, 385 F.3d 144,
156 (2d Cir. 2004). As explained earlier, Nguyen was convicted of
possession of counterfeit securities in violation of 18 U.S.C.
§513(a) and received a sentence of imprisonment of more than one
year.

Lee v. United States, 137 S. Ct. 1958, 1965 (2017).  Here, there
is a reasonable probability Nguyen would have rejected the plea
bargain had he known that his guilty plea would render him
deportable and permanently ineligible for citizenship.  Nguyen
told Carney that he "would not and could not plead guilty if doing
so would result in [his] removal or deportation."  See Nguyen Aff.
at ¶12.  As Nguyen came to the United States at age five, had lived
here for 13 years, and had no connection to Vietnam, deportation
would have been a more severe penalty than any foreseeable marginal
increase in Nguyen's sentence which might have resulted from a
conviction following trial rather than a guilty plea pursuant to
a plea agreement.  As the Supreme Court noted in Lee, where the
consequences of a guilty plea are "similarly dire" to the
consequences of going to trial, "even the smallest chance of
success at trial may look attractive." Lee, 137 S. Ct. at 1966.
Therefore, rejection of the plea bargain "would have been rational"
if Nguyen had been correctly informed that the offense he was
pleading guilty to was an aggravated felony.  Padilla, 559 U.S. at
372.

     Nevertheless, the government argues that the Petition should
be denied on the ground that Nguyen "cannot show that he continues
to suffer a significant collateral consequence from the judgment
being challenged and that issuance of the writ will eliminate this

9

consequence."[2] Opposition at 30 (internal quotation and citation omitted).   The First Circuit "[has] not explicitly set out what comprises a continuing collateral consequence."   George, 676 F.3d at 255-56.   It has, however, articulated two necessary, but not necessarily sufficient, requirements: (1) the consequence must go beyond "the mere fact of a conviction"; and (2) "it must be shown that the court's decree will eliminate the claimed collateral consequence and bring about the relief sought."   Id. at 256, n.2 & 3.

---

[2]   In a related argument, the government contends that because Nguyen has not yet been ordered deported his claims are not ripe; there is no case or controversy as required by Article III of the United States Constitution; and, therefore, the court lacks jurisdiction to adjudicate the Petition.   See Opposition at 22-28.   However, in Castro-Taveras, the First Circuit considered the merits of a coram nobis petitioner's claim that his counsel had misadvised him as to the immigration consequences of his plea, without first deciding whether petitioner was facing removal proceedings at the time he filed his petition.   See Castro-Taveras, 841 F.3d at 38-42.   In any event, because the court concludes, as explained below, that Nguyen has demonstrated that he continues to suffer significant collateral consequences from his conviction, it also concludes that he has standing to seek the issuance of a writ of coram nobis and that his claims are ripe for adjudication.   See United States v. Faison, 956 F. Supp. 2d 267, 269 (D.D.C. 2013) ("A petitioner seeking a writ of coram nobis must show that . . . adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III."); see also Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (identifying the doctrine of standing as "one of [the] landmarks that set apart the Cases and Controversies that are of the justiciable sort referred to in Article III" and explaining that "the irreducible constitutional minimum of standing" contains the "three elements" of "injury in fact," causation, and redressability).

In *Fiswick v. United States*, the Supreme Court indicated that the loss of the opportunity to become a naturalized citizen constitutes a significant collateral consequence.  See *Fiswick v. United States*, 329 U.S. 211, 221-22 (1946).  This court finds that it is.

In *Fiswick*, the Court held that the case of an alien who had already served his sentence was not moot and he could still challenge his conviction, in part because of the continuing effect this conviction would have on his ability to seek naturalized citizenship.  See *Fiswick*, 329 U.S. at 220-22.  The Court wrote:

> [O]ther disabilities or burdens may flow from the judgment, improperly obtained, if we dismiss this case as moot and let the conviction stand.  If [petitioner] seeks naturalization, he must establish that during the five years immediately preceding the date of filing his petition for naturalization he has been and still is a person of good moral character.  An outstanding judgment of conviction for this crime stands as ominous proof that he did what was charged and puts beyond his reach any showing of ameliorating circumstances or explanatory matter that might remove part or all of the curse.  And even though he succeeded in being naturalized, he would, unless pardoned, carry through life the disability of a felon; and by reason of that fact he might lose certain civil rights.  Thus [petitioner] has a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him. In no practical sense, therefore, can [petitioner's] case be said to be moot.

*Id.* (internal citations and quotations omitted).  Although the petitioner in *Fiswick* was not seeking a writ of error coram nobis, the Supreme Court later cited *Fiswick* as authority for extending the writ of coram nobis to petitioners who had already served a

11

sentence of conviction but suffered ongoing collateral consequences. See United States v. Morgan, 346 U.S. at 513, n.27 (fact that civil liberties may be affected makes petitioner eligible for coram nobis relief); see also United States v. Cariola, 323 F.2d 180, 182 (3d Cir. 1963) (convicted felon's loss of right to vote is a continuing collateral consequence that is sufficient to make the validity of his conviction a justiciable question).

Like the petitioner in Fiswick, Nguyen is currently ineligible to become a naturalized citizen due to his conviction. This continuing consequence is real, not hypothetical, because USCIS denied Nguyen's application for naturalization on this basis alone. See Decision Letter. As Nguyen has maintained lawful permanent residence in the United States for 37 years, he would otherwise be eligible for naturalized citizenship. See 8 U.S.C. §1427. Accordingly, the vacatur of Nguyen's conviction will eliminate the sole cause of this significant collateral consequence.

Furthermore, in Williams, 858 F.3d at 714, the First Circuit had "little trouble concluding" that a petitioner whose prior conviction "forever preclude[d] him from obtaining lawful permanent resident status and subject[ed] him to deportation at any moment" "continue[d] to suffer significant collateral consequences from his [conviction] and that a writ of error coram

12

nobis would remedy those consequences." Williams, 858 F.3d at 714-15. Nguyen's conviction for an aggravated felony similarly subjects him to possible deportation. See 8 U.S.C. §1228(c). Although the government contends that a 2008 repatriation agreement between the United States and Vietnam excludes from deportation Vietnamese nationals, like Nguyen, who arrived in the United States prior to 1995, there is no guarantee that this repatriation agreement will remain in effect in the future or that it will be adhered to by the United States and Vietnam.[3] Even if the repatriation agreement renders Nguyen's actual deportation impossible at present, Nguyen's conviction still subjects him to the potentially severe consequence of placement into removal proceedings and immigration detention. See 8 U.S.C. §§1226(a), 1228(c).

In view of the foregoing, the court finds that "justice demands the extraordinary balm of coram nobis relief." George,

---

[3] In fact, news reports indicate that in 2017, the United States deported a small number of Vietnamese nationals that arrived in the United States prior to 1995 despite the fact that the repatriation agreement was in effect. See, e.g., Charles Dunst, JUST SECURITY, "Protections Fall for Vietnamese Immigrants as Trump Pushes Deportations", available at https://www.justsecurity.org/66015/protections-fall-for-vietnamese-immigrants-as-trump-pushes-deportations/. It has also been reported that such Vietnamese immigrants have been subject to immigration detention, sometimes in excess of six months, despite Vietnam's refusal to issue travel documents for those individuals. See id.

676 F.3d at 255 (internal quotation marks omitted).   Therefore, the court is granting the Petition on that ground.[4]

IV. ORDER

In view of the foregoing, it is hereby ORDERED that the Petition for Coram Nobis, Audita Querela, or Other Appropriate Relief (Docket No. 111) is ALLOWED.   Accordingly, a writ of error coram nobis is GRANTED and Nguyen's conviction is VACATED.

UNITED STATES DISTRICT JUDGE

_____

[4] As the court is granting a writ of error coram nobis, it is not addressing Nguyen's alternative claims for a writ of error audita querela or for relief under the All Writs Act or Federal Rule of Civil Procedure 60(b).